```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **BARBARA GINN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 08-3856** |
| **THE FOLGER COFFEE COMPANY and THE PROCTOR & GAMBLE COMPANY** | **SECTION: "B"(3)** |

ORDER AND REASONS

Before the Court is Defendant's Motion To Dismiss (Rec. Doc. No. 9). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion is **GRANTED.**

BACKGROUND

Plaintiff, Barbara Ginn was employed at Folger Coffee Company before and after Hurricane Katrina. Plaintiff, on her behalf and that of a putative class, filed two identical suits against the Folger Coffee Company – one in state court and one in federal court. Her complaint alleges that her employer utilized her social security number and other pertinent confidential information without her permission, obtained a FEMA trailer in her name, and had the trailer placed on Folger's private property ("Gentilly Village"). Ginn claims she did not have access to the trailer at all times; she was only allowed to use it when she was working. Furthermore, Ginn claims that as a result of Folger's

1

"unauthorized" use of her information, she was not able to obtain FEMA assistance. Plaintiff instituted the above captioned suit for damages for (1) negligence, (2) conversion, and (3) identity theft.

Shortly after Hurricane Katrina passed, FEMA began providing temporary housing assistance to evacuees that were displaced by Hurricane Katrina. The assistance payments are authorized under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5170(a)(3)(B). As part of this program, FEMA began a widespread dispersal of FEMA trailers.[1]

Shortly after Hurricane Katrina, Folger representatives met with Louisiana officials regarding economic recovery. During an early meeting, Folger representatives were advised of an "industrial trailer program" to be implemented by FEMA. This industrial trailer program was designed to enable businesses to restart operations by providing them with travel trailers that could be used to house employees whose homes were damaged or destroyed and needed somewhere to live in order to return to work. Folger had some vacant land on its production site; so it volunteered to participate in the program. In addition to 50 trailers purchased directly by

---

[1] The Stafford Act directs that FEMA "may provide financial assistance to individuals or households to rent alternative housing accommodations." 42 U.S.C. § 5174(c)(1)(A)(1).

2

Folger, the government delivered travel trailers to Folger in the middle of September, 2005.

Folger implemented a rotating work program whereby employees would work 12-hour shifts for seven days in a row, and then have seven days off. Displaced employees were only permitted to use the trailers during these work rotations. Folger paid all of the expenses associated with housing its employees in those trailers, feeding them while they were on site, and reimbursing them for the costs of traveling to and from the location where their families were residing after the storm.

FEMA site inspectors arrived at "Gentilly Village" to inspect and confirm that the trailers were being used appropriately. Folger explained to the FEMA inspectors that up to four employees were assigned to any single trailer at one time. To confirm that the trailers provided to Folgers were being used appropriately, FEMA inspectors requested a list of names and social security numbers of employees who were, or may in the future, reside in the trailers. The FEMA inspectors advised Folger that this information was necessary to prevent fraudulent use of the trailers, and to ensure that the people using the trailers were qualified to do so. Since Folger was not sure which employees would use the trailers, Folger provided FEMA with a full list of

3

employee names with social security numbers. On essentially a weekly basis thereafter, FEMA inspected Folger's list of employees assigned to the trailers to confirm that the trailers were being used appropriately.

**A.  Federal Court Complaint**

In the federal complaint, Plaintiff claimed that she and Folger were diverse parties.[2] Pursuant to Federal Rules of Civil Procedure 12(b)(6), the claims in that case were dismissed; the negligence and identity theft claims were dismissed on April 5, 2007, and the conversion claim was subsequently dismissed on August 9, 2007.[3] Plaintiff filed a Motion for Relief from Judgment which this Court denied, entering final judgment on November 15, 2007.[4]

**B.  State Court Petition**

In the petition filed in the Civil District Court for the Parish of Orleans, Plaintiff alleged the same three claims but instead argued that Folger was a non-diverse party. Despite Plaintiff's contentions, on July 2, 2008, this matter was removed to this Court on the basis of

---

[2] See Plaintiff's State Court Complaint, attached to Defendant's Memo in opposition as Exhibit 2.
[3] Amended Order Granting Def.'s Mot. Dismiss (Rec. Doc. No. 23); Order Granting Def.'s Mot. Dismiss (Rec. Doc. No. 26).
[4] Order & Reasons Den. Pl.'s Mot. for Relief from J. (Rec. Doc. No. 41); Final J. in favor of Def. (Rec. Doc. No. 42).

4

diversity jurisdiction, 28 U.S.C. § 1332. Defendant now seeks to have the all three claims in this matter dismissed with prejudice.

### DISCUSSION

Under the doctrine of res judicata, a plaintiff is barred from re-litigating a claim already decided. Ordinarily, an affirmative defense such as res judicata should be addressed by summary judgment or at trial, but if the relevant facts are admitted, uncontroverted or conclusively established so that nothing further can be developed by a trial of the affirmative defense of res judicata, the matter may be disposed of upon a motion to dismiss. *Larter & Sons v. Dinkler Hotels Co.*, 199 F.2d 854, 855 (5th Cir. 1952). It is overwhelmingly evident that Plaintiff has already filed an identical lawsuit claiming damages for negligence, conversion, and identity theft.

Under the doctrine of res judicata, Plaintiff is barred from bringing the same state law claims against Folger in this suit. Plaintiff took no steps to seek reconsideration or review of this Court's April 3, 2007 Order dismissing her claims of negligence and invasion of privacy. Res judicata applies when there is a previous final judgment on the merits; the prior judgment was between identical parties; and there is a second action based on the same claims raised

in the first action. *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 386 (5th Cir. 2005).

The second requirement of res judicata is also met--the previous judgment was between identical parties. In both suits, Barbara Ginn is the named plaintiff (and proposed class representative), and Folger and P&G are the only named defendants.

The third element is met as well. Under this step of res judicata analysis, "the critical issue is whether the two actions are based on the same nucleus of operative facts." *Test Masters Edu. Serv's., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). This current action is identical to the first, and thus, is unquestionably based upon the same claims and facts as the earlier dismissed federal court suit.

As for the conversion claim, the Court's November 9, 2007 Order dismissed an identical conversion claim. Plaintiff interprets the November order as allowing her to proceed with the claim in state court. However, this is not state court. Moreover, this Court has already stated in its Order and Reasons on November 9, 2007, "the Plaintiff's success on the merits of Defendant's Motion to Dismiss is unlikely." Conversion is a wrongful act of dominion over the possessory rights of another, depriving that person of

6

possession of property permanently or for an indefinite time. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 760 (La. 1985).

Plaintiff has no claim for conversion because a conversion cause of action requires the unlawful interference with the ownership or possession of goods or other movable property. *Chrysler Credit Corp. V. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir. 1995). Plaintiff has failed in this regard to state a claim for which relief can be granted. Although Plaintiff may have been entitled to some disaster aid, she was not automatically entitled to a FEMA trailer. Plaintiff has not alleged that she ever rightfully possessed a FEMA trailer, that Folger wrongfully took a FEMA trailer from her, or that Folger rightfully possessed but then refused to surrender any particular trailer to which she became entitled. Accordingly, Plaintiff's claim for conversion fails.

Further, in the plaintiff's previously dismissed identical suit before this Court, she was afforded an additional 90 days to discover any facts to amend her complaint to state a claim for conversion. Plaintiff's conversion claim was dismissed after she failed to comply with that deadline. Considering these facts, Plaintiff's request for leave must also be **DENIED**.

7

**CONCLUSION**

For the aforementioned reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss is **GRANTED.  IT IS FURTHER ORDERED** that Plaintiffs' Request for Leave to Amend is **DENIED.**

New Orleans, Louisiana this 10th day of November, 2008.

*[signature]*

UNITED STATES DISTRICT JUDGE